<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARIO ALEJANDRO KOT, | : | **Hon. Freda L. Wolfson** |
| Petitioner, | : | |
| | : | Civil No. 12-1720 (FLW) |
| v. | : | |
| BRIAN ELWOOD, et al., | : | <u>OPINION</u> |
| Respondents. | : | |

**APPEARANCES**:

    RICHARD C. TOSCANINI, ESQ.
    CHRISTOPHER J. CASSAR, P.C.
    13 East Carver Street
    Huntington, New York  11743
    Attorneys for Petitioner

    TROY D. LIGGETT
    U.S. Dept. of Justice, Civil Division
    Office of Immigration Litigation, District Court Section
    P.O. Box 868, Ben Franklin Station
    Washington, DC  20044
    Attorneys for Respondents

<u>WOLFSON</u>, District Judge:

    Mario Alejandro Kot, confined at Monmouth County Correctional Institution in Freehold, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal-period mandatory detention, pursuant to 8 U.S.C. § 1226(c), in the custody of respondents and the Department of Homeland Security ("DHS").  Respondents filed an Answer, a declaration, and several exhibits, and Petitioner filed a Reply.  For the reasons expressed in this Opinion, this Court holds that Petitioner's detention is governed by 8 U.S.C. § 1226(a) because

DHS did not take Kot into custody when he was released from criminal incarceration for an offense specified by § 1226(c), grants a Writ of Habeas Corpus, and directs the Immigration Judge to conduct a bond hearing pursuant to 8 U.S.C. § 1226(a)(2) to determine if he is a flight risk or danger to the community.

## I.  BACKGROUND

Mario Alejandro Kot, a native and citizen of Argentina, challenges his detention in the custody of DHS at Monmouth County Correctional Institution.  The facts are undisputed.  Kot emigrated to the United States from Argentina as a lawful permanent resident on July 12, 1963, at the age of six.  (Dkt. 1 at 8 & Dkt. 9-4 at 2.)  At 6:35 a.m, on August 11, 2011, DHS arrested Kot at his home in Bethpage, New York;  DHS served Kot with a Notice to Appear charging him with removability pursuant to sections 237(a)(2)(A)(ii) (conviction of two crimes of moral turpitude), based on the following criminal convictions:  (1) August 11, 1993, conviction for petit larceny, for which he was sentenced to $400 fine and one year conditional discharge (Dkt. 9-8); (2) July 13, 1999, conviction for criminal possession of a forged instrument, for which he was sentenced to 20 days imprisonment, three years probation and $665 in restitution (Dkt. 9-1); and (3) November 9, 2010, conviction for forcible touching, for which he was sentenced to six years probation (Dkt. 9-10).  On August 11, 2011, DHS determined that Kot was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c).  DHS has detained Kot from August 11, 2011, to date, pursuant to 8 U.S.C. § 1226(c).

Kot executed the § 2241 Petition presently before this Court on March 12, 2012.  The Clerk accepted it for filing on March 20, 2012.  In the Petition, Kot argues that he is not subject to mandatory pre-removal period detention under 8 U.S.C. § 1226(c) because he was not taken

into custody when he was released from criminal incarceration for a crime underlying the charges for removal, and he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a). He seeks a Writ of Habeas Corpus directing respondents to either release him from custody or provide a hearing.

By Order entered March 23, 2012, this Court ordered service on respondents and ordered respondents to file an answer and relevant documents. DHS filed an Answer, declaration and several documents, arguing that § 1226(c) mandates Kot's pre-removal-period detention. In his Reply, Kot argues that he is not subject to mandatory detention under § 1226(c) because DHS did not take him into custody when he was released from criminal incarceration for an underlying removeable offense, but arrested him at his home months or years later.

## II.  DISCUSSION

Kot argues that he is not subject to mandatory detention under 8 U.S.C. § 1226(c) because DHS did not take him into custody when he was released from criminal incarceration for an offense specified in § 1226(c). The government argues that this Court should defer under Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), to the BIA's determination of § 1226(c) in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001). Thus, the question in this case is whether the statutory command that DHS "shall take into custody any alien [specified in this section] when the alien is released" means that DHS shall take the alien into custody "when the alien is released," or does it mean that DHS shall take the alien into custody 12 years after the alien is released (assuming he was released at all)?[1]

---

[1] The issue is pending before the Third Circuit in Sylvain v. Holder, C.A. No. 11-3357 (3d Cir. docketed Aug. 31, 2011) (DHS appealed Judge Pisano's order granting habeas relief and ordering a bond hearing), and Desrosiers v. Hendricks, C.A. No. 12-1053 (3d Cir. docketed Jan. 11, 2012) (petitioner's appeal of Judge Hochberg's order denying habeas relief), but briefs have
(continued...)

A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention is not statutorily authorized by 8 U.S.C. § 1226(c). See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Diop v. ICE/Homeland Security, 656 F. 3d 221, 226 (3d Cir. 2011).

B. Statutory Authority to Detain

The statutory authority to detain an alien depends on where the alien is in the removal process. Section 1226 governs the pre-removal-period detention of an alien. Section 1226(a) authorizes the arrest, detention and release of an alien who is not a flight risk or danger to the community pending a decision on whether the alien is to be removed from the United States, except as provided in § 1226(c). See 8 U.S.C. § 1226(a). Section § 1226(c), an exception to § 1226(a), mandates detention of specified criminal aliens during removal proceedings, provided DHS takes the alien into custody when the alien is released from criminal incarceration and detention does not continue for a prolonged period of time. See 8 U.S.C. § 1226(c); Diop v.

---

[1](...continued)
not yet been filed in either appeal.

ICE/Homeland Sec., 656 F. 3d at 232 ("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community").

>Section 1226 provides in full:
>
>>(a) Arrest, detention, and release
>>
>>On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General –
>>
>>  (1) may continue to detain the arrested alien; and
>>
>>  (2) may release the alien on –
>>
>>    (A) bond of at least $1,500 . . ; or
>>
>>    (B) conditional parole; but
>>
>>  (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.
>>
>>(b) Revocation of bond or parole
>>
>>The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien.
>>
>>(c) Detention of criminal aliens
>>
>>(1) Custody
>>
>>The Attorney General shall take into custody any alien who -

5

> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.  A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226.

In this case, there is no dispute that Kot's pre-removal-period detention is governed by either § 1226(a), which allows the Immigration Judge to release an alien who is neither a flight risk nor a danger to the community, or the exception set forth in § 1226(c), which mandates

detention prior to the removal period.  See Diop v. ICE/Homeland Sec., 656 F. 3d at 232.  Since Kot's detention has not yet become  prolonged, see Diop at 232, the outcome of this case depends on the meaning of the following words in § 1226(c)(1):  "The Attorney General shall take into custody any alien [specified in this section], when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."  8 U.S.C. § 1226(c)(1).  The government argues that this language mandates Kot's detention beginning on August 11, 2011, because he was released from criminal incarceration for a removable conviction listed in § 1226(c) after October 9, 1998, even though DHS provided no documentation of Kot's criminal incarceration and release after October 9, 1998, and even though Kot has lived in the community for years.  Specifically, the government argues that this Court is required to defer under Chevron to the BIA's interpretation of § 1226(c) in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001), because the statutory language is ambiguous and it is reasonable to read "when the alien is released" to mean "any time after the alien is released."

 (1) What was the BIA's Holding in Matter of Rojas?

Matter of Rojas involved the alien's appeal to the BIA of the Immigration Judge's rejection of the argument that Rojas was not subject to mandatory detention under § 1226(c)(1) because the government failed to apprehend him at the time of his release from incarceration on parole for an offense covered by § 1226(c), and instead waited two days before taking him into custody.  See Matter of Rojas, 23 I. & N. Dec. 117.  First, the BIA determined that the language in § 1226(c)(1) is not clear, but is susceptible to different readings.  Id. at 120.  The BIA stated that, although "[t]he statute does direct the Attorney General to take custody of aliens

7

immediately upon their release from criminal confinement . . . Congress was not simply concerned with detaining and removing aliens coming directly out of criminal custody; it was concerned with detaining and removing *all* criminal aliens." Id. at 122. The BIA

> construe[d] the phrasing "an alien described in paragraph (1)," as including only those aliens described in subparagraphs (A) through (D) of section [1226(c)(1)], and as not including the "when released" clause. Our interpretation is derived from the natural meaning of the statutory language, from the object and design of the statute as a whole, and from the history of the mandatory detention provisions. It is reinforced by practical concerns that would otherwise arise.

Matter of Rojas, 23 I. & N. Dec. at 125.

The BIA held that Rojas "is subject to mandatory detention pursuant to section [1226(c)], despite the fact that he was not taken into Service custody immediately upon his release from state custody." Matter of Rojas, 23 I. & N. Dec. at 127. Board member Lory Diana Rosenberg wrote a dissenting opinion in which six board members joined. Board member Rosenberg opined:

> The word '"when' [is defined] as 'just after the moment that.'" Alikhani v. Fasano, 70 F. Supp. 2d 1124, 1130 (S.D. Cal. 1999) (quoting *Webster's Third New International Dictionary* 2602 (3d ed. 1976). Therefore, as one court noted, the clear language of the statute requires that "the mandatory detention of aliens 'when' they are released requires that they be detained at the time of release." Alikhani v. Fasano, supra, at 1130; see also Velasquez v. Reno, 37 F. Supp. 2d 663, 672 (D.N.J. 1999) ("This court cannot simply ignore the plain language of the statute which provides that an alien is to be taken into custody 'when the alien is released.'"). As another court noted, "Congress could have required custody 'regardless of when the alien is released' or 'at any time after the alien is released,'" but did not do so. Alwaday v. Beebe, 43 F. Supp. 2d 1130, 1133 (D. Or. 1999) . . . . These courts have concluded uniformly that "[t]he plain meaning of this language is that it applies immediately after release from incarceration, not to

8

>aliens released many year[s] earlier." Pastor-Camarena v. Smith, supra, at 1417-18.

Matter of Rojas, 23 I. & N. Dec. at 132-33 (Rosenberg, dissenting).[2]

The dissenting opinion of Board Member Rosenberg concluded:

>The stretch of interpretation required by the majority's construction is not supported by the plain language of the statute and is unreasonable. The aliens described in paragraph (1) of section [1226(c)] are the ones who are deemed to be inadmissible and deportable for the cited violations and taken into custody when they are released from criminal incarceration. These are the aliens described in paragraph (2) as the ones who may not be released.

>The interpretation I reach from a straightforward reading of the plain language of the statute would allow for a hearing when an individual alien, such as this respondent, has already been released into the community, and it would authorize the detention of such individuals where warranted following an individualized hearing.

Matter of Rojas, 23 I. & N. Dec. at 139 (Rosenberg, dissenting).

(2) Is This Court Required to Defer to the BIA's Interpretation of § 1226(c) in Rojas?

If "Congress has directly spoken to the precise question at issue," a court and an agency "must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43. In the immigration context, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987) (quoting Chevron, 467

---

[2] The Velasquez opinion cited in the dissenting opinion of Board Member Rosenberg was written by then New Jersey District Judge, now Third Circuit Court of Appeals Judge (Senior), Maryanne Trump Barry.

U.S. at 843 n. 9).  Deference to an agency's interpretation of a statute "is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent."  Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581,  (2004).

In order to sustain the holding of Matter of Rojas, this Court would have to find that Congress's command that the Attorney General "shall take into custody any alien [specified in this section], when the alien is released," does not mean what it says, but instead commands that the Attorney General "shall take into custody any alien [specified in this section], any time after the alien is released."  The majority of district courts considering the issue have found that § 1226(c) is not ambiguous.  See, e.g., Beckford v. Aviles, 2011 WL 3515933 (D.N.J. Aug. 9, 2011); Sylvain v. Holder, 2011 WL 2580506 at *7 (D.N.J. June 28, 2011) ("Respondents also argue that the statute is ambiguous because it is plausible that the word 'when' means 'after,' and, in that case, the statute commands that the government 'shall take the alien into custody after the alien is released.'  This Court rejects the argument that 'when' means 'after.'"); Keo v. Lucero, 2011 WL 2746182  *3 (E.D. Va. July 13, 2011("[t]he term 'when' includes the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun") (citations omitted); Louisaire v. Muller, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) ("Matter of Rojas, however, is wrong as a matter of law and contrary to the plain language of the statute.  The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same offenses*, even if they are still serving part of their sentence out in the community, under 'parole, supervised release, or probation'"); Dang v. Lowe, 2010 WL 2044634 (M.D. Pa.

May 20, 2010) (holding that § 1226(c)(1) does not apply where alien was not taken into immigration custody until 10 years after release from incarceration for an enumerated offense); Khodr v. Adduci, 697 F. Supp. 2d 774, 774-75 (E.D. Mich. 2010) ("Because the Court finds that the statute at issue clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in Matter of Rojas"); Scarlett v. DHS, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009) ("the statute does not apply when the alien was not taken into immigration custody at the time of his release from incarceration on the underlying criminal charges"); Waffi v. Loiselle, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007) ("the mandatory detention statute . . . does not apply to an alien . . . who has been taken into immigration custody well over a month after his release from state custody" for an enumerated offense).  But see Diaz v. Muller, 2011 WL 3422856 (D.N.J. Aug 04, 2011) (finding "when released" to be ambiguous); Gomez v. Napolitano, 2011 WL 2224768 (S.D.N.Y. May 31, 2011) (same); Sulayao v. Shanahan, 2009 WL 3003199 (S.D. N.Y. Sept. 15, 2009) (same).

     This reading of § 1226(c) is consistent with the First Circuit's reading of the statute in Saysana v. Gillen, 590 F. 3d 7 (1st Cir. 2009).  Massachusetts released Mr. Saysana in 1991 from a five-year sentence for a 1990 (removable) conviction.  In 2007 DHS took him into custody under 8 U.S.C. § 1226(c)(1) and initiated removal proceedings charging that the 1990 conviction qualified as an aggravated felony rendering him removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).  See Saysana, 590 F. 3d at 9.  In a precedent decision, Matter of Saysana, 24 I.&N. Dec. 602 (BIA 2008), the BIA held that Saysana was covered by the "when the alien is

released" language of § 1226(c) because he was released from state custody on a dismissed non-removable charge after October 8, 1998.  See Saysana, 590 F. 3d at 9.  The First Circuit held that, because the plain meaning of § 1226(c) was contrary to the BIA's reading of the statute, Chevron deference was not permissible.

> In our view, the natural reading of the statutory provision from top to bottom makes clear that the congressional requirement of mandatory detention is addressed to the situation of an alien who is released from custody for one of the enumerated offenses.  The statutory language embodies the judgment of Congress that such an individual should not be returned to the community pending disposition of his removal proceedings.  Both the language and the structure of the statutory provision state this mandate in a clear and straightforward manner.  As explained . . . in Oscar v. Gillen, 595 F. Supp. 2d 166[, 170] (D. Mass. 2009) (Tauro, J.):
>
>> The "when released" provision immediately follows the list of enumerated offenses, indicating that the former modifies the latter.  Additionally, § 1226(c) provides that the alien shall be detained upon release regardless of whether he is subsequently arrested for the "same offense," reinforcing the notion that the entire clause applies to the list of enumerated offenses immediately preceding it.

Saysana, 590 F. 3d at 13-14.

In 2010, the BIA overruled Matter of Saysana in Matter of Garcia Arreola, 25 I.&N. Dec. 267, 270 (BIA 2010), but held fast to Matter of Rojas.  The government took Garcia Arreola into custody and charged him with removal in 2009, when the state dismissed unrelated criminal charges and released him.  The removal was based on a state drug conviction on March 31, 1989, for which a 365-day sentence had been imposed.  The Immigration Judge ruled that Garcia Arreola was not subject to mandatory detention under § 1226(c), and the government appealed.  The BIA held that § 1226(c) "requires mandatory detention of a criminal alien only if he or she is

released from non-DHS custody after the expiration of the TCPR [on October 8, 1998,] and only where there has been a post-TPCR release that is directly tied to the basis for detention under [§ 1226(c)(1)]." Id. at 269.  The BIA determined that Garcia Arreola was not subject to mandatory detention under § 1226(c) where he was released from custody for an offense covered by § 1226(c) prior to October 8, 1998.  In a footnote, the BIA indicated that it was not receding from Matter of Rojas, 23 I.&N. Dec. 117.  Id. at n.4.

Significantly, in January 2012, this Court rejected the government's argument that § 1226(c) is ambiguous.  See Christie v. Elwood, 2012 WL 266454 (D.N.J. Jan. 30, 2012).

> "Congress clearly intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody resulting from the removable offense enumerated in § 1226(c).  Because the plain language of the statute commands that an alien is to be taken into custody 'when the alien is released,' this Court may not defer to the BIA's re-writing of the statute."  Parfait at *9.  Because the Attorney General did not take Harold Christie into custody when he was released from criminal incarceration for a removable offense in 1999, but allowed him to live in the community for 12 years before taking him into custody in September 2011, Christie is not subject to the mandatory detention exception in § 1226(c)(1).  Christie's pre-removal-period detention is governed by 8 U.S.C. § 1226(a), which authorizes the Immigration Judge to release him on bond if the Immigration Judge finds that he is neither a flight risk nor a danger to the community.

Christie at *9.

Acknowledging Christie, DHS now argues that "the Government has refined and modified its argument with additional case law and seeks to present a more persuasive analysis as to why the language of the statute is ambiguous." (Dkt. 9 at 22.)  However, none of the decisions on which DHS relies issued after this Court's January 30, 2012, ruling in Christie.[3]

---

[3] This Court is aware that, before this Court decided Christie, Judges Hochberg and
(continued...)

(Dkt. 9 at 35-36.)  Moreover, as DHS acknowledges, this month, Judge Sheridan held in <u>Nunez v. Elwood</u>, 2012 WL 1183701 (D.N.J. Apr. 9, 2012), that "'when . . . released' means 'immediately' and not 'any time after' release as determined by the BIA's interpretation . . . . Mandatory detention twelve years after release from a misdemeanor drug conviction is certainly not immediate, and therefore the petitioner should be subject to detention under Section 1226(a) and is entitled to an individualized bond hearing under Section 1226(a)(2)." <u>Id.</u> at *3.

The only new argument discerned by this Court in the Answer is that DHS now argues that DHS "is not deprived of its ability to detain Mr. Kot under 8 U.S.C. § 1226(c) despite a gap between his date of release and his detention by [DHS because e]ven where a statute imposes on the Government a mandatory duty to act by a certain time, the Government does not lose the authority to act after that deadline, absent a clear indication that Congress intended that result." (Dkt. 9 at 51.)  In support of this argument, DHS relies on <u>United States v. Montalvo-Murillo</u>, 495 U.S. 711 (1990), for the proposition that "'no real blame can be fixed' for a missed detention-related deadline, and there is 'no reason to bestow upon the [detainee] a windfall and to visit upon the Government and the citizens a severe penalty by mandating release of possibly dangerous [detainees]' because a timing violation occurs."  (Dkt. 9 at 51.)

This argument misses the mark.  If this Court holds that Kot is not subject to mandatory detention under § 1226(c) because DHS did not take him into custody when he was released from criminal incarceration, but waited for 12 years, then it does not follow that Kot must be

---

[3](...continued)
Chesler deferred to <u>Rojas</u> after finding that § 1226(c) is ambiguous and the BIA's interpretation of the statute was reasonable.  See <u>Diaz v. Muller</u>, 2011 WL 3422856 (D.N.J. Aug. 4, 2011); <u>Desrosiers v. Hendricks</u>, Civ. No. 11-4643 (FSH) sl. opinion (D.N.J. Dec. 30, 2011).

released.  Rather, such a ruling means that the Immigration Judge will conduct a bond hearing, pursuant to 8 U.S.C. § 1226(a), and Kot will be released only if he poses neither a flight risk nor a danger to the community.  This Court agrees with Petitioner that, "[u]nlike the case in Montalvo-Murillo, the petitioner here is *not* arguing that DHS loses all authority to detain anyone facing removal proceedings no matter when that person is detained - this is what Congress provided for in [§ 1226(a)]."  (Dkt. 11 at 9.)

In the end, DHS insists that Kot is subject to mandatory detention, even if he poses no flight risk or danger to the community, and even though DHS has not documented any date (after October 8, 1998) on which Kot was released from criminal incarceration for a removable offense specified in § 1226(c).  This Court's Order to answer directed DHS to file with the answer documentation showing the dates on which Kot was released from criminal incarceration for the offenses underlying the removal charges, but DHS failed to document the dates of Kot's criminal incarceration and release.  Rather, DHS provided a "certificate of disposition" for each offense.  The certificate of disposition for the 1993 petit larceny conviction shows the "date of arrest/issue: 05/12/1993," and "date of plea" and "date of disposition" as August 11, 1993.  (Dkt. 9-8 at 2.) The disposition states "pled guilty, fine with imprisonment alternative $400/30 day(s) (paid)," "conditional discharge = 1 year."  Id.  The certificate of disposition for the criminal possession of a forged instrument shows:  "date of arrest/issue:  10/01/1998," "date of plea" of April 27, 1999, and date of disposition of July 13, 1999.  (Dkt. 9-9 at 2.)  The disposition states "pled guilty, imprisonment = 20 day(s), probation 3 year(s), restitution= $665."  Id.  The certificate of disposition for the 2010 forcible touching conviction states:  "date of arrest:  05/07/2010," and

15

that on November 9, 2010, the judge sentenced Kot to $500, order of protection for five years, and probation for six years. (Dkt. 9-10 at 2.)

These certificates of disposition do not establish that Kot was criminally detained or released on any date after October 8, 1998. Under these circumstances, this Court finds that Kot is not subject to mandatory detention under § 1226(c) because DHS has not shown that he was released from physical incarceration for a removable offense specified by § 1226(c).

Alternatively, even if this Court were to presume that Kot was criminally incarcerated for 20 days in 1999, this Court holds that Kot is not subject to the mandatory detention exception in § 1226(c) because DHS did not take Kot into custody when he was released from criminal incarceration for a specified offense in 1999, but allowed him to live in the community for 12 years before taking him into custody in August 2011. Kot's pre-removal-period detention is governed by 8 U.S.C. § 1226(a), which authorizes the Immigration Judge to release him on bond if he is neither a flight risk nor a danger to the community. This Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Kot with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2), to determine if he is a flight risk or danger to the community, within 10 days of the date of the entry of the Order accompanying this Opinion.

### III.  CONCLUSION

This Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2).


       /s/ Freda L. Wolfson
    **FREDA L. WOLFSON, U.S.D.J.**


DATED:  May 2, 2012